*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY WAYNE HUBBARD,

        Defendant-Appellant.

UNPUBLISHED
June 15, 2023

No. 359885
Jackson Circuit Court
LC No. 03-004124-FC

Before: CAMERON, P.J., and MURRAY and GADOLA, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order denying his successive motion for relief from judgment. We affirm.

## I. BACKGROUND

In May 2004, defendant was convicted of one count of first-degree murder, MCL 750.316(1)(a), for slashing the throat of Yatasha Bush. He was sentenced to life imprisonment. At trial, Shaylene Clark testified that she went to a party with Bush in August 2003. After the party, defendant picked up Clark and Bush in a van and took them to a vacant house. At the vacant house, they smoked cocaine together, and defendant argued with Bush. During the argument, defendant choked Bush. Bush briefly escaped defendant, but defendant choked Bush again and threatened to kill her. Defendant proceeded to slit Bush's throat. Clark ran away after defendant slit Bush's throat, but defendant caught up with her. They spent the next couple days in a motel together. Bush's body was eventually found decomposing in the vacant house.

---

[1] *People v Hubbard*, unpublished order of the Court of Appeals, entered July 18, 2022 (Docket No. 359885).

In his direct appeal, defendant claimed evidentiary error, instructional error, prosecutorial misconduct, and ineffective assistance of trial counsel. This Court rejected the majority of defendant's arguments but held that the trial court improperly admitted other-acts evidence and hearsay.[2] In regard to inadmissible evidence, the Court held that the error was harmless given the overwhelming evidence against defendant:

> Shaylene Clark testified that she was with [Bush] on the night she was killed and, in fact, witnessed her murder. According to Clark, after picking up both her and [Bush] from a party at the home of a man named "Timmy," defendant drove the girls in a green minivan to an unoccupied house where, during an argument regarding [Bush] having lost defendant's baby "and the things she was doing to get money," defendant murdered [Bush] by cutting her throat outside a bedroom located on the first floor of the home. Although defendant challenges the credibility of Clark's testimony on the basis of her admitted inability to vividly and consistently recall the events during the weeks following the murder, we note that Clark's recount of the murder itself was, nonetheless, both detailed and consistent with other evidence admitted at trial.

> With respect to the scene of the crime, although indicating that she had never before or since the murder visited the house in which [Bush] killed, Clark's testimony regarding the floor plan of the home and the location of the murder therein were consistent with the testimony and photographic evidence provided by the investigating officers who discovered [Bush's] body just inside the doorway of a first floor bedroom approximately two weeks after the killing. Clark's testimony that the three entered the unoccupied home through a rear entrance that had been boarded shut was also consistent with the condition of the home as testified to by the investigating officers, who recalled at trial that, with the exception of a rear door that had been boarded shut but appeared to at sometime have been pried open, the home was secure.

> Clark's testimony concerning the manner in which [Bush] was killed was also strikingly consistent with that of the medical examiner who performed the autopsy on [Bush's] body. The medical examiner testified that a reddish-brown stain found on the carpeting inside the home near the neck of the body was shown through testing to be human blood that had soaked the carpeting near the area of the neck. The medical examiner further testified that this evidence, when viewed in combination with the excessive decomposition of the throat area, indicated "trauma" to the neck consistent with [Bush's] throat having been "cut [or] slashed so that a large amount of blood was lost from there," causing her death.

> The condition of the scene and the evidence derived from the body were not, however, the only evidence to lend credence to Clark's testimony and support defendant's guilt independent of the erroneously admitted hearsay testimony.

---

[2] *People v Hubbard*, unpublished per curiam opinion of the Court of Appeals, issued December 6, 2005 (Docket No. 256831).

Indeed, Detective Gary Schuette of the Jackson Police Department testified that at the time Clark first relayed to him her account of the murder he had yet to positively identify either the body or a cause of death. Schuette further testified that before either of these facts were known to the public, defendant arrived at the police station requesting to speak with someone about a body recently found by the police in a house. Schuette testified that defendant thereafter indicated with extreme certainty that the body found by the police was that of his girlfriend, Yatasha Bush, who had been raped and then murdered by having her throat slashed. Although initially hypothesizing that [Bush] had been killed by her new boyfriend at the behest of her father, when presented with both a photograph of [Bush] and Schuette's theory of defendant's involvement in her death, defendant began to cry uncontrollably before stating, "F--- it. I'm just going to tell you what happened." After then describing having picked up both Clark and [Bush] from the home of a man named "Timmy" using a van borrowed from a friend, defendant paused momentarily before stating, "I ain't confessing. You gotta prove it. You can't place me in that house."

These inculpatory statements corroborating at least a portion of Clark's testimony and evincing knowledge of the identity of the victim prior in time to any public release of that information were not the only such statements made by defendant. Tammy Hurley testified that sometime in early August 2003 she observed defendant enter a green minivan being driven by a woman and that, as he entered the van, defendant stated that he was going to get [Bush]. Hurley also testified that on the day [Bush's] body was found she was approached by defendant while at a party store on Biddle Street. Hurley testified that as defendant approached her, he began to cry while telling her that [Bush] was dead and that it was her body that had been found in the house on Biddle Street. Hurley noted, however, that at the time defendant made this statement to her the police had not yet even brought the body out from the house.

In light of the foregoing evidence, including defendant's own statements evincing knowledge of the identity of the victim and the manner in which she was killed prior in time to any public release of that information, defendant cannot show that any error in the admission of [Bush's] extra-judicial statements was outcome determinative. [*Id*. at 5-6.]

In 2006, defendant moved for relief from judgment asserting newly discovered evidence. Defendant also asserted claims of prosecutorial misconduct and ineffective assistance of trial counsel and appellate counsel. The trial court denied that motion, and defendant unsuccessfully sought leave to appeal that decision.[3]

Twelve years later, defendant again moved for relief from judgment. The trial court denied defendant's motion because there was not a significant possibility that defendant was actually

---

[3]*People v Hubbard*, unpublished order of the Court of Appeals, entered May 3, 2007 (Docket No. 273749), lv den; *People v Hubbard*, 480 Mich 888 (2007).

innocent. The trial court also concluded that defendant had not submitted new evidence and did not satisfy the procedural threshold of MCR 6.502(G)(2) because none of the evidence satisfied the four-prong *Cress* test. See *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003). This Court dismissed defendant's delayed application for leave to appeal,[4] but the Supreme Court vacated the order and remanded this case to the trial court for reconsideration of the motion for relief from judgment,[5] explaining that the trial court erred in applying the *Cress* factors to the procedural threshold of MCR 6.502(G)(2).

On remand, the trial court again denied defendant's motion for relief from judgment. The trial court declined to waive the provisions of MCR 6.502(G)(2) because it did not find a significant possibility that defendant was innocent. Additionally, the trial court held that defendant failed to present new evidence to meet the procedural threshold of MCR 6.502(G)(2). The trial court also rejected defendant's arguments of prosecutorial misconduct and ineffective assistance of trial and appellate counsel because they were barred by MCR 6.502(G).

## II. ANALYSIS

### A. NEW EVIDENCE

This Court reviews a trial court's decision on a motion for relief from judgment for an abuse of discretion. *People v Swain (On Remand)*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008), which includes an error of law, *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006). Findings of fact are reviewed for clear error. *People v McSwain*, 259 Mich App 654, 861; 676 NW2d 236 (2003).

Defendant first asserts that the trial court erred when it held that defendant failed to present new evidence to meet the threshold of MCR 6.502(G)(2) in order for the trial court to consider a successive motion for relief from judgment. We conclude that, except as to the records sent from the city of Jackson and the 12th District Court, none of the evidence is "new" for purposes of the court rule.

A criminal defendant is only entitled to file one motion for relief from judgment. MCR 6.502(G)(1). An exception to this rule is found in MCR 6.502(G)(2), which states:

> (G) Successive Motions.
>
> (1) Except as provided in subrule (G)(2), regardless of whether a defendant has previously filed a motion for relief from judgment, after August 1, 1995, one and only one motion for relief from judgment may be filed with regard to a conviction.

---

[4] *People v Hubbard*, unpublished order of the Court of Appeals, entered June 29, 2020 (Docket No. 353356).

[5] *People v Hubbard*, 507 Mich 953 (2021).

(2) A defendant may file a second or subsequent motion based on any of the following:

(a) a retroactive change in law that occurred after the first motion for relief from judgment was filed,

(b) a claim of new evidence that was not discovered before the first such motion was filed, or

(c) a final court order vacating one or more of the defendant's convictions either described in the judgment from which the defendant is seeking relief or upon which the judgment was based.

The clerk shall refer a successive motion to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions.

The court may waive the provisions of this rule if it concludes that there is a significant possibility that the defendant is innocent of the crime. For motions filed under both (G)(1) and (G)(2), the court shall enter an appropriate order disposing of the motion.

This is not defendant's first motion for relief from judgment. Because the trial court did not waive the procedural requirements of MCR 6.502(G) and defendant does not argue that a retroactive change in the law occurred, defendant was required to present "a claim of new evidence that was not discovered before the first such motion was filed" before the trial court could consider the substance of defendant's motion. MCR 6.502(G)(2). Defendant need not satisfy the *Cress* test to meet the procedural threshold of MCR 6.502(G)(2). See *Swain*, 499 Mich 920. Instead, defendant must only show that he has "new evidence that was not discovered before the first such motion was filed." MCR 6.502(G)(2).

The trial court addressed each of the seven pieces of alleged new evidence submitted by defendant. The first piece of alleged new evidence was a written report of a September 17, 2003 interview of Walter Timmy Pryor by Detective Schuette. In the interview, Pryor told Detective Schuette that he could not recall the date of the party, but believed it "to be about August 12, 2003." He stated that Bush wore "black sweatpants and sweat shirt, a large grey T-shirt and dirty socks with 'Tenny' shoes" at the party and that he saw her the day after the party wearing different clothing. Pryor also stated that Bush left the party alone and that Clark received a ride from someone at a store. In a 2017 affidavit, Pryor stated that the party was "[o]n or about August 12, 2003" and that he believed that he spoke truthfully to Detective Schuette in the 2003 interview.

The trial court concluded that the report was not new evidence because (1) defense counsel indicated his intent to call Pryor as a witness in his answer to the prosecution's pre-trial discovery request, and (2) the report was attached to defendant's first motion for relief from judgment as part of Appendix A. Although the trial court erroneously relied on the due-diligence factor from *Cress* when it reasoned that the document was discoverable, see *Hubbard*, 507 Mich 953, defendant did not rebut the trial court's additional reasoning that the report was attached to his first motion for relief from judgment in Appendix A and was subject to mandatory disclosure at trial. Because

defendant made use of this statement with his first motion for relief from judgment, it was not new evidence under MCR 6.502(G)(2). Therefore, defendant has not shown that Pryor's statements were new evidence not discovered before his first motion for relief from judgment.

The trial court also found that the second group of evidence, several affidavits from defendant's family members who asserted that defendant attended his sister's wedding reception on August 16, 2003, was not new evidence because such alibi evidence was offered at trial. The trial court did not err in this regard. In fact, one of the affiants was defendant's sister, who testified at trial. Therefore, her affidavit does not meet the threshold of MCR 6.502(G)(2), and nor do the rest of the wedding affidavits. Contrary to defendant's contention, additional wedding affidavits are not new because defendant presented testimony at trial regarding the wedding alibi. To that point, the testimony of the additional wedding attendees was known to defendant before his first motion for relief from judgment because the wedding reception occurred on August 16, 2003, and defendant claimed that he attended the reception.

The third piece of alleged new evidence is two crime laboratory reports. The first report indicated that Bush's underwear and pants were around her ankles and made no mention of a skirt, while the second report indicated that DNA obtained from Bush's fingernails revealed the presence of more than one donor but excluded defendant as one of those donors. Additionally, the second report discussed a Budweiser beer bottle found near Bush's body that revealed the presence of a male donor and defendant was excluded as that donor. The trial court held that these reports were not new evidence because the court file contained proof of service that defendant was served the Michigan State University Entomology Report before trial on January 14, 2004. Further, defendant was served with the autopsy report, entomologist report, odontologist report, JPD supplemental report #03-024291, laboratory reports, and supplements #1644-03 on April 28, 2004. Defendant does not refute that these items were served on him before trial as expressed in the lower court record. Therefore, as the trial court concluded, the laboratory reports did not meet the new evidence threshold of MCR 6.502(G)(2).

The fourth piece of alleged new evidence is two probable cause affidavits for the issuance of search warrants. Defendant contends that he received these affidavits through a Freedom of Information Act request years after trial. See MCL 15.231 *et seq*. The trial court correctly held that these affidavits were not new evidence because both were attached as exhibits to defendant's first motion for relief from judgment as part of Appendix B. Therefore, defendant has failed to show that the affidavits were new evidence not discovered before his first motion for relief from judgment.

The fifth piece of alleged new evidence was a written report of a November 4, 2003, interview of Robert Walters by Detective Schuette. Amongst other things, in the interview Walters indicated that he had given Clark and an older black man rides in the past, and that he gave Clark and the man a ride to a motel on one occasion, but he could not recall the specific occasion in which he was alleged to have driven Clark and defendant to the Best Motel. The trial court held that this interview was not new evidence because defense counsel indicated his intent to call Walters as a witness in his answer to the prosecution's discovery request before trial. Like the Pryor statement, the trial court cannot rely on the fact that the report was discoverable. See *Hubbard*, 507 Mich 953. However, defendant provides no documentary evidence to refute that these reports were provided during discovery before trial as required by MCR 6.201(B). Again,

"defendant bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated," *Elston*, 462 Mich at 761, and he failed to do so. Therefore, defendant has not shown that Walters's statements were new evidence not discovered before his first motion for relief from judgment.

The sixth piece of evidence are letters obtained from the city of Jackson and 12th District Court. The letter from the 12th District Court stated that the court did not handle nuisance abatement claims and would not have any records pertaining to nuisance abatement, while the Jackson city attorney's office stated that it was unable to locate a docket number for a nuisance abatement proceeding in 2003 or 2004 for 121 East Addison. The city of Jackson also provided defendant with documents, which stated that Pryor, the owner of 121 East Addison Street, had been cited for housing code violations in August 2004 and the property was subsequently brought into compliance by December 2004. Defendant contends that these documents show that Detective Schuette falsely testified that he could not serve Pryor a subpoena on May 4, 2004 at 121 East Addison Street as the property was padlocked by the city in response to drug raids that were conducted at the residence.

The trial court held that these documents were not new evidence because they were discoverable with due diligence before trial. However, again, the *Cress* test does not apply to the procedural threshold of MCR 6.502(G)(2). *Swain*, 499 Mich 920. Hence, the records from the 12th District Court and the city of Jackson are new evidence because defendant did not receive these documents until 2017 and, unlike Pryor's and Walters's statements, were not previously disclosed and subject to disclosure under MCR 6.201(B). Therefore, the trial court erred in concluding that the records from the 12th District Court and the city of Jackson were not new evidence.

The seventh and final piece of alleged new evidence are the results of defendant's June 23, 2015 polygraph examination, which were that defendant did not indicate any deception when he answered that he did not cut Bush's throat, hurt her neck, or participate in her death. The trial court held that the polygraph results did not satisfy the conditions of admissibility and that, at best, were cumulative evidence because defendant maintained his innocence throughout trial.

"[T]he judge in a post-conviction hearing on a motion for new trial based on newly found evidence may in his or her discretion consider the results of a polygraph examination." *People v Barbara*, 400 Mich 352, 412; 255 NW2d 171 (1977). The polygraph test results may be considered in deciding a motion for a new trial when:

> (1) they are offered on behalf of the defendant, (2) the test was taken voluntarily, (3) the professional qualifications and the quality of the polygraph equipment meet with the approval of the court, (4) either the prosecutor or the court is able to obtain an independent examination of the subject or of the test results by an operator of the court's choice, and (5) the results are considered only with regard to the general credibility of the subject. [*People v Mechura*, 205 Mich App 481, 484; 517 NW2d 797 (1994).]

When the new evidence produced by the polygraph is useful only to impeach a witness, it is deemed cumulative. *Barbara*, 400 Mich at 363. Further, if the polygraph results are duplicative

to what was heard at trial, it is considered cumulative evidence. *Id.* at 363 n 2. Defendant is not a new or recanting witness. Defendant claimed that he was innocent at trial, and he asserts that the polygraph results state the same. The results of the examination are duplicative to what the jury heard at trial and, as a result, are cumulative. See *id*. Because defendant is not a new witness and the polygraph results are cumulative, the trial court correctly held that the polygraph examination results are not new evidence discovered before the first motion for relief from judgment. See MCR 6.502(G)(2).

Defendant's successive motion for relief is barred under MCR 6.502(G)(1) and (2), except for any claim that relates to the records from the city of Jackson and 12th District Court.

## II.  WAIVER OF MCR 6.502(G)(2)

Defendant next asserts that the trial court erred when it declined to waive MCR 6.502(G)(2) because defendant established through new evidence a significant possibility of actual innocence. According to defendant, the trial court impermissibly made ultimate credibility determinations when it determined there was not a significant possibility of actual innocence.

The "significant possibility that the defendant is innocent" standard as applied to waive the substantive requirements in MCR 6.502(G)(2) was addressed in *Swain (On Remand)*, 288 Mich App at 638-639. To satisfy this standard, a defendant "must show that it is more likely than not that no reasonable juror would have found [the defendant] guilty beyond a reasonable doubt." *Id.* at 638, quoting *Schlup v Delo*, 513 US 298, 327; 115 S Ct 851; 130 L Ed 2d 808 (1995) (quotation marks omitted). This standard "permits review only in extraordinary cases," but "does not require absolute certainty about the defendant's guilt or innocence." *Id.* at 288 (quotation marks and citations omitted).

Defendant cites *People v Johnson*, 502 Mich 541; 918 NW2d 676 (2018), for the contention that the trial court impermissibly took on the role of ultimate fact-finder. The Supreme Court explained that a new trial may be granted on the basis of newly discovered evidence when: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Id.* at 566, citing *Cress*, 468 Mich at 692. Under the fourth factor, "a trial court must first determine whether the evidence is credible," but the trial court's "function is limited when reviewing newly discovered evidence, as it is not the ultimate fact-finder." *Johnson*, 502 Mich at 567. However, these requirements apply to a defendant's substantive entitlement to relief after a defendant has met MCR 6.502(G)(2)'s procedural threshold. *Hubbard*, 507 Mich 953 (explaining that "the plain text of the court rule does not require that a defendant satisfy all elements of the [*Cress*] test"); see also *People v Swain*, 499 Mich 920; 878 NW2d 476 (2016). This was plain in *Johnson*, 502 Mich at 566, as the Court noted that the "prosecutor does not argue that defendants' claim of newly discovered evidence . . . is procedurally barred, either under MCR 6.502(G) or MCR 6.508(D)(3)(a)." Thus, defendant's reliance on *Johnson* and *Cress* is misplaced.

Nevertheless, in addressing the threshold issue, the trial court still must assess whether it "is more likely than not that no reasonable juror would have found [the defendant] guilty beyond a reasonable doubt." *Swain*, 288 Mich App at 638 (quotation marks and citation omitted). The

thrust of defendant's argument was that the new evidence undermined the credibility of the prosecution's witnesses, particularly Clark and Detective Schuette. In assessing the alleged new evidence in the context of the evidence presented at trial, the trial court held that there was not a significant possibility of innocence.

Although defendant contends that the trial court usurped the role of the fact-finder and made ultimate credibility determinations when it rejected Pryor's statements, the trial court properly addressed Pryor's statements in the context of the trial and considered whether no reasonable juror would have found defendant guilty beyond a reasonable doubt. In its opinion, the trial court explained that viewing Pryor's statements in conjunction with the testimony of Clark, Detective Schuette, and defendant's alibi witness did not show that no reasonable juror would have convicted defendant. The trial court explained that had Pryor testified at trial, defendant would not have been more likely to be acquitted because the jury found Clark credible, despite discrepancies in her testimony that defendant repeatedly pointed out at trial. The jury also heard testimony that defendant was at his sister's wedding reception the night of the murder.

The trial court did not err when it found that there was not a significant possibility that defendant was innocent of the crime and by refusing to waive the provisions of MCR 6.502(G). First, the trial court's decision to waive the procedural threshold of MCR 6.502(G)(2) is discretionary because "the court *may* waive the provisions of this rule if it concludes that there is a significant possibility that the defendant is innocent of the crime." *People v Bell*, 276 Mich App 342, 347; 741 NW2d 57 (2007). Second, the alleged new evidence that defendant presents to support his claim of actual innocence does not establish that a reasonable jury would not have found defendant guilty beyond a reasonable doubt.

Pryor stated in his 2017 affidavit that the party occurred "[o]n or about August 12, 2003," that he spoke truthfully to Detective Schuette in 2003, and that his "recollection of the events is vague because many years have passed." As the trial court concluded, this statement does not undermine Clark's testimony any more than it was already undermined at trial, as the trial testimony did not establish the date of the party or homicide definitively as August 16, 2003. Indeed, Clark only testified that she sat down with Detective Schuette to figure out the date over a calendar and approximated that the party occurred on August 16, 2003.

With respect to the statements by Walters regarding giving Clark and an older black man rides in the past to a motel on one occasion, this record would not have had an impact at trial. Detective Schuette did not testify that he was able to confirm whether Walters gave Clark and defendant a ride the night of the murder. Detective Schuette only referred to attempting to confirm with the cab company in the context of Clark's inability to recollect specific details.

The same holds true with respect to the wedding affidavits, as they were cumulative of the alibi witness whom defendant presented to suggest that he was at the wedding reception during the time of the murder. Additionally, defendant's polygraph examination was cumulative of defendant's assertion of innocence at trial. Finally, the records from the city of Jackson and 12th District Court were not relevant at trial. The jury did not hear Detective Schuette testify that Pryor's residence was padlocked when he attempted to serve a subpoena, as he only made this statement during a due-diligence hearing outside the presence of the jury.

Defendant's alleged new evidence that defendant's DNA evidence was not found on Bush's fingernail clippings or on the Budweiser bottle found near Bush's body was cumulative of the testimony about DNA heard at trial. The jury heard evidence that no DNA evidence tied defendant to the scene of the murder, and that defendant was excluded both as a contributor to the semen DNA found in Bush's underwear, and as a donor to the DNA found on the cigarette at the scene. The jury also heard that LabCorp did not receive a Budweiser bottle to test for DNA.

On direct appeal, this Court concluded that the evidence against defendant was "overwhelming," *Hubbard*, unpub op at 4-5, explaining that Clark provided detailed consistent testimony that was corroborated by other evidence at trial. She was able to describe the layout of the house, despite never going to the Biddle house before or after the murder, and testified that Bush was killed in a manner consistent with the testimony of the medical examiner. Further, testimony at trial established that defendant made inculpatory statements to the police and other witnesses. Before the police identified Bush as the victim or removed her from the house, defendant told Hurley that it was Bush's body in the house. Additionally, defendant told Detective Schuette that the body was Bush and that her throat had been slit before the police had identified the body. After defendant was shown a picture of Bush by Detective Schuette, defendant stated: "F--k it. I'm just going to tell you what happened," and proceeded to tell Detective Schuette that he picked up Bush and Clark from Timmy's house in a van, and then said; "I ain't confessing. You gotta prove it. You can't put me in that house."

None of the alleged new evidence overcomes the overwhelming evidence at trial or establishes that a reasonable jury could not find defendant guilty beyond a reasonable doubt. Therefore, the trial court did not err when it held that defendant did not establish a significant possibility that he was innocent. See MCR 6.502(G).

## III. PROSECUTORIAL MISCONDUCT AND INEFFECTIVE ASSISTANCE

Defendant next contends that the trial court erred when it concluded defendant's claims of prosecutorial misconduct and ineffective assistance of trial, and appellate counsel was barred under MCR 6.502(G)(2). We disagree, except to the extent defendant's claims relate to the records from the city of Jackson and the 12th District Court. However, defendant has failed to establish prosecutorial misconduct or ineffective assistance of counsel in relation to those records.

This Court reviews allegations of *Brady*[6] violations de novo. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016). The components of a *Brady* claim are "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id*. at 212 (quotation marks and citation omitted). "The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith." *People v Chenault*, 495 Mich 142, 150; 845 NW2d (2014) (citation omitted). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. "To establish materiality, a defendant must show that

---

[6] *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

-10-

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted).

Defendant's only prosecutorial misconduct argument related to the city of Jackson and 12th District Court records is that Detective Schuette falsely testified that he attempted to serve Pryor with a subpoena at his house, but the city of Jackson had padlocked it. At the due-diligence hearing, Detective Schuette stated that he believed that the house was padlocked because of drug raids that were conducted on the house in May 2004. Defendant has presented new evidence that showed in August 2004, Pryor's residence was cited for violations of the housing code and brought into compliance in December 2004. The letters further show that the city of Jackson and 12th District Court could not locate a docket number for nuisance abatement proceedings. Defendant does not explain how these records establish that Detective Schuette was lying in the due-diligence hearing. The city's inability to locate a docket number does not necessitate the conclusion that the house was not padlocked in May 2004.

Even if the city's and court's records established that Detective Schuette lied about the padlock on Pryor's residence, defendant did not present evidence that the prosecution knew or should have known that Detective Schuette's testimony was false and knowingly, or inadvertently suppressed that evidence. See *Dimambro*, 318 Mich App at 212. Further, defendant cannot establish that there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the trial would have been different. See *id*. Detective Schuette's testimony regarding Pryor was only heard at the due-diligence hearing, outside the presence of the jury. As a consequence of Detective Schuette's testimony, the trial court held that the prosecution engaged in due diligence to locate Pryor for trial. Had the trial court held that the prosecution failed to engage in due diligence, the trial court would have given a missing witness instruction regarding Pryor, see *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003). Defendant has failed to argue that the missing witness instruction would have affected the jury's verdict. Therefore, defendant has failed to show he is entitled to relief for prosecutorial misconduct premised on the city of Jackson and 12th District Court records.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant asserts that both trial and appellate counsel were ineffective. In order to obtain a new trial for ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Defendant raised extensive arguments regarding ineffective assistance of trial counsel; however, only one of defendant's arguments pertains to new evidence. Defendant argues that trial counsel failed to investigate and impeach Detective Schuette for claiming Pryor's house was padlocked because of a drug raid when he attempted to serve him a subpoena. However, trial counsel had no reason to investigate this claim before trial because trial counsel had no knowledge that Pryor would not show. Trial counsel would have no reason to question the veracity of Detective Schuette's testimony at the due-diligence hearing because the new evidence was not yet discovered.

-11-

Further, the city of Jackson and 12th District Court records do not establish that Detective Schuette lied when he testified that the house was padlocked. Even assuming that trial counsel was ineffective for failing to discover that Detective Schuette was lying, defendant has not alleged how this failure to investigate and impeach was prejudicial. Detective Schuette made this statement outside the presence of the jury. Further, defendant has made no argument that had the trial court given a missing witness instruction, the outcome at trial would have been different. See *id*. Defendant has failed to establish ineffective assistance of trial counsel in relation to the newly discovered evidence.

The test for ineffective assistance of appellate counsel is the same test as that for trial counsel. *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008). Defendant did not raise ineffective assistance of appellate counsel in relation to the new records, so that argument is barred by defendant's failure to meet the strictures of MCR 6.502(G).

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Michael F. Gadola

-12-